IRIS MARÍA PERELES, ETC., Plaintiff and Appellant, v. ONGAY GARAGE & RADIO CO., INC., Defendant and Appellee.

No. 8362. Argued February 19, 1942.—Decided February 24, 1942.

*Celestino Iriarte, F. Fernández Cuyar,* and *H. González Blanes* for appellant. *José C. Jusino* for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

On the morning of September 30, 1938, Iris María Pereles Pagán, a girl then twelve years of age, was standing on the sidewalk of Notre Dame Building at Stop 5½, Puerta de Tierra, in conversation with another girl and a young lady. An automobile which was parked at the time in front of an adjoining establishment, allegedly owned by Ongay Garage & Radio Co., Inc., was violently and unexpectedly driven in reverse by Juan Emilio Negrón in such way that its rear wheels climbed on the sidewalk and the girl was caught between the car and the wall, causing her grave personal injuries which it is unnecessary to describe for the purpose of this opinion. The injured person, represented by her mother with *patria potestas,* Ana María Pagán de Pereles, brought the present action against Ongay Garage & Radio Co., Inc., a domestic corporation, and alleged that Juan Emilio Negrón was at the time an employee of the above-named concern, and that when inflicting the injury he was acting within the scope of his employment.

The court below found that the plaintiff sustained grave injuries resulting from the fault and negligence of Juan E. Negrón. It, however, exonerated the defendant from blame, and said:

"Although it might be conceded (without our holding) that the workshop or repairshop for batteries referred to by the witnesses in the present case was owned by the defendant, and that the latter operated the establishment through Asunción Díaz, it was not, however, shown that Juan E. Negrón, who caused the accident, was in the employ of the defendant or was acting for or on its behalf.

We are not as much convinced as the lower court seems to be that it is not sufficiently shown by the evidence that when committing the negligent act which caused the injury he was not acting for or on behalf of the workshop which, according to the plaintiff, is owned by the defendant. However, as the liability of the defendant ultimately depends upon whether the workshop was operated by Asunción Díaz, not as lessee as claimed by the defendant, but as the latter's employee, we will reverse the order of treatment followed by the court below in deciding this case, and will determine first whether Asunción Díaz was the lessee of the workshop or whether on the contrary he was acting as a mere employee of the defendant; for if Díaz owned the business, it would be unnecessary to determine whether or not Negrón was an employee of the workshop, or whether, with Díaz' consent, he was working for the latter, since in either case the defendant would be exempt from liability.

■■ The defendant in its answer alleged that it had owned the workshop in question, but that prior to the accident it had leased the same to its former employee, Asunción Díaz, and that ever since that time the defendant had had no connection with the conduct or management of said business; a matter which concerned Asunción Díaz as the only party having an interest in the business.

The plaintiff introduced evidence tending to show that, notwithstanding the alleged lease, the defendant, even after the accident, was still paying for the electric current used in the workshop as well as the lease rental on the building; that in the telephone directory the workshop was advertised

as defendant's property; and that the workshop was not paying for any municipal license by virtue of a tax exemption granted to the defendant.

The defendant introduced in evidence, without objection, deed No. 39 executed in San Juan on November 25, 1938, before Notary Ernesto Juan Fonfrías, whereby defendant leased the workshop in question to Asunción Díaz for one year from November 1, 1938, at a weekly rental of $5.00, the following terms, among others, being stipulated: the lessor bound itself to pay for the electric current consumed in the workshop and would continue paying in its name the rent on the premises, the lessee binding himself to reimburse the lessor for the payments so made at the end of each month.

The appellant in her brief does not deny the existence of the lease contract, although she alleges that notwithstanding such contract, the defendant is liable for the negligent conduct of Juan Emilio Negrón, and then says: "Such contention rests on the doctrine of *ostensible agency or agency by estoppel.*" Counsel for appellant properly argues that the doctrine of ostensible agency is predicated on estoppel, and cites a great number of cases where such doctrine has been applied and in which the element of estoppel has been present.

In invoking said doctrine, counsel for the appellant seem to have failed to take into account that, in order that estoppel may be successfully invoked, it is an indispensable requisite that the acts, conduct, or statements of the party sought to be estopped should have induced the adverse party to change his position and to act to his prejudice in consequence of said acts, conduct, or statements. *Railroad Company* v. *Dubois,* 79 U. S. 47; *Jones* v. *U. S.,* 96 U. S. 24, 29; *Arizona* v. *Copper Queen Mining Co.,* 233 U. S. 87, 95; *Ashwander et al.* v. *Tennessee Valley Authority et al.,* 297 U. S. 288, 322; *Deitrick* v. *Greany,* 309 U. S. 190, 197.

In the case at bar the doctrine of estoppel can not possibly be applied, as the conduct of the defendant to which we

have already referred could not in any way influence the performance of the tortious act and, moreover, it has not been shown that the plaintiff was aware of such conduct. The fact that the workshop in question should belong to Ongay Garage & Radio Co., Inc., or to anybody else could not have induced the plaintiff in any way to stop at the side-walk of the Notre Dame Building.

We will not go into a discussion of the long list of cases cited by the appellant, wherein the doctrine of ostensible agency was applied. We will only consider two of them on which great emphasis is laid by the appellant. The first case is *Lynch* v. *Robe*, 59 N.Y.S. 109, the facts of which according to counsel for the appellant are very similar to those of the case at bar. The following quotation is taken from said case:

"Where defendant opens a branch of his business, and places it in charge of a third person, who carries it on in the name of defendant, and represents to all persons that he is the defendant, and thereafter buys certain property for use in the business in the name of defendant, defendant is liable therefor, if such third person was his general agent, though he purchases after revocation of his agency, where no notice of the revocation was given."

From the mere recital of the facts set forth in the above-quoted paragraph, it clearly appears that the seller of the property had been induced to believe that he was selling to the defendant, and although the agency had been revoked prior to the closing of the deal, the plaintiff had not been advised of such revocation, and from his previous knowledge of the connection between the defendant and the agent he might have concluded that the relation of principal and agent in question existed at the time of the making of the sale.

The other case, *Rhone* v. *Try My Cab Co. et al.*, 65 F. (2d) 834, can easily be distinguished from the case at bar. There a claim for damages was made by a woman who had hired a taxicab which, under circumstances that it is unnecessary to state, publicly appeared as owned by the defendant

company when in point of fact it was not so owned. The plaintiff in said case might certainly have been induced to believe, from the circumstances above alluded to, that the taxicab was owned by the defendant company, and either because of the prestige or credit, or some other asset of the defendant, might have decided to utilize its service by hiring one of its vehicles. So that it was possible to invoke successfully therein the doctrine of estoppel.

The same may be said regarding the other cases from this jurisdiction cited by the appellant. *Successors of Esmoris & Co.* v. *D. S. Stern & Co.,* 29 P.R.R. 595, and *Torres* v. *P. R. Racing Corporation,* 40 P.R.R. 423.

■ From the evidence introduced by the plaintiff to the effect that the defendant paid the rent on the premises, the electric current consumed in the workshop, etc., it might be inferred that the relation between Ongay Garage & Radio Co., Inc., and Asunción Díaz was that of employer and employee, and in the absence of proof to the contrary by the defendant, this would have been sufficient to uphold a pronouncement in the sense that Asunción Díaz was an employee of the defendant. *Hozian* v. *Crucible Steel Casting Co.,* 112 A.L.R. 333 (Ohio, 1937), and monograph published in the same volume, p. 337. See also *Sánchez* v. *Asiatic Petroleum Co.,* 40 P.R.R. 98. But such inference was overcome by the lease contract which plainly shows why and on what terms the defendant carried out the acts in question which, if unexplained by its evidence, might have been sufficient to sustain the contention of the appellant that the workshop was operated by the defendant through Asunción Díaz as its employee.

As Asunción Díaz held the workshop under a lease, the defendant is not liable for the acts of the employees of the former, and it is therefore unnecessary to consider whether or not Díaz is liable for the acts of Negrón.

For the reasons stated the judgment appealed from must be affirmed.